# 23-7834

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

**Gordon Clark (*individual capacity*), Gordon Clark (*as Lillian's husband*), Gordon Clark (*as sole fiduciary, sole beneficiary, and sole creditor of the Estate of Lillian J. Clark*), and Estate of Lillian J. Clark,**

Plaintiff-Appellant,

**v.**

**Santander Bank, N.A., Timothy Wennes, Pierre Habis, Kenneth O'Neill, Wells Fargo & Company, Scott Powell (*as former CEO of Santander, and as COO of Wells Fargo*), Bendett & McHugh, PC, Adam L. Bendett, Jeffrey M. Knickerbocker, Mark A. Piech, Joseph Abraham, Dominick D. Neveux, John Doe(s), and Jane Doe(s),**

Defendants-Appellees.

---

On Appeal from the United States District Court
for the District of Connecticut

---

### Brief of Plaintiff-Appellant Gordon Clark

Gordon Clark, Pro Se
70 Elm Street, Enfield, CT 06082
860.833.3195

1

## **<u>TABLE OF CONTENTS</u>**

1.  Table of Contents …………………………………………………............. 2

2.  *Pro se* Plaintiff-Appellant's Brief ……………………………….............. 3

3.  Memorandum of Law …………………………………………….......... 4

4.  Table of Authorities …………………………………………...... 21

5.  Statutes ……………………………………………...………………..… 21

6.  Doctrines, Rules, and Oath ….....…………....……………..……………..… 22

7.  Statement of Subject Matter and Appellate Jurisdiction ……………....... 23

8.  Statement of the Issues Presented for Review …………………………... 26

9.  Statement of the Case …………………………………………….….... 26

10. Background ……………………………………………….…...… 27

11. Statement of the Facts ……………………………………....…..…… 39

12. Summary of the Argument  ……………………………………....……... 46

13. Argument ……………………………………...……………..…….…... 48

14. Conclusion ……………………………….…....…………………..…..…… 57

15. Certificate of Compliance …………………………….…..……..…… 59

16. Certificate of Service …………………………………...…..…..… 60

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

| | | |
|---|---|---|
| Gordon Clark (*individual capacity*), | ) | **Docket No. 23-7834** |
| Gordon Clark (*as Lillian's husband*), | ) | |
| Gordon Clark (*as sole fiduciary, sole* | ) | Civil Case No. 3:22-CV-00039-SVN |
| *beneficiary, and sole creditor of the* | ) | |
| *Estate of Lillian J. Clark*), | ) | March 1, 2024 |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | **ORAL ARGUMENT REQUESTED** |
| vs. | ) | |
| | ) | |
| Santander Bank, N.A., | ) | |
| Timothy Wennes, Pierre Habis, | ) | |
| Kenneth O'Neill, | ) | |
| Wells Fargo & Company, | ) | |
| Scott Powell (*as former CEO of* | ) | |
| *Santander*, *and as COO of Wells* | ) | |
| *Fargo*), Bendett & McHugh, PC, Adam | ) | |
| L. Bendett, Jeffrey M. Knickerbocker, | ) | |
| Mark A. Piech, Joseph Abraham, | ) | |
| Dominick D. Neveux, John Doe(s), and | ) | |
| Jane Doe(s), | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

## PRO SE PLAINTIFF-APPELLANT'S BRIEF

Pursuant to the applicable provisions of the *Connecticut Practice Book*, including, but not limited to the *Connecticut Attorney's Oath*, the *Rules of Professional Conduct*, the *Federal Rules of Civil Procedure*, and the *Federal Rules of Appellate Procedure*. The *pro se* Plaintiff-Appellant Gordon Clark (Mr. Clark) *respectfully* files with this Court his **BRIEF**. Moreover, the *pro se* Plaintiff-Appellant Gordon

Clark (Mr. Clark, I, my, me, and/or his) ***hopes and prays*** to *The Creator of Heaven and Earth* that what this *Brief* may lack in *form* will be surpassed by its *substance*, *all by His Grace*.

## <u>MEMORANDUM OF LAW</u>
*[Bold italic added throughout document for emphasis].*

1.) ***The Ninth (9th) Commandment*** is:

> ***"Thou shalt not bear false witness against thy neighbor."***

> Exodus 20:16

2.) ***The Tenth (10th) Commandment*** is:

> ***"Thou shalt not covet thy neighbor's house …,***
> ***nor any thing that is thy neighbor's."***

> Exodus 20:17

3.) ***The Second (2nd) Great Commandment*** is:

> ***"… Thou shalt love thy neighbor as thyself."***

> Matthew 22:39

4.) ***"Therefore shall a man leave his father and his mother, and shall cleave***
> ***unto his wife: and they shall be one flesh."***

> Genesis 2:24

5.) *"For this cause shall a man leave his father and mother, and cleave to his wife; And they twain shall be one flesh: so then they are no more twain, but one flesh.  What therefore God hath joined together, let not man put asunder."*

Mark 10:7-9

6.) There is a **Common Law Maxim**, which states the following:

*"Truth is the essence of justice.  Without truth justice cannot exist."*

7.) There is a **Common Law Maxim**, which states the following:

*"There is **nothing more sacred, more inviolate, than the house of every citizen**."*

8.) **The Declaration of Independence** – 1776, which states, in part, the following:

> "*We hold these **truths to be self-evident**, that all men are created equal, that they are **endowed by their Creator with certain unalienable Rights**, that among these are Life, Liberty and the pursuit of Happiness.*"

9.) *The Constitution of the United States – **1st Amendment**, which reads as follows:*

> "*Congress shall make no law respecting an establishment of religion, **or prohibiting the free exercise thereof; or abridging the freedom of speech**, or of the press; or the right of the people peaceably to assemble, and **to petition the government for a redress of grievances.**"*

10.)    "*The Constitution of the United States states only one command*

*twice," in the 5th Amendment, and the 14th Amendment, that is, **the command/clause of due process of law**.*

11.)    *The Constitution of the United States*: *Due Process of Law Clause –*

   ***5th Amendment***, which states, in part:

> *"... nor be deprived of life, liberty, or property, **without due process of law**; nor shall private property be taken for public use, without just compensation*;
>
> and the ***14th Amendment, Section 1***, which states, in part: *"... nor shall any state deprive any person of life, liberty, or property, **without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws**."*

12.)    *The Constitution of the United States*: *Freedom to Contract Clause,*

   *Article I, Section 10, Clause 1*, which states, in part:

> *"No State shall ... pass any ... Law impairing the Obligation of Contracts ..."*

13.)    **The Judiciary Act of 1789 - SEC. 35**, which reads, in part, as

   follows:

> "*And be it further enacted, That in **all courts of the United States, the parties may plead and manage their own causes personally** or by assistance of such counsel or attorneys at law as by the rules of the said courts respectively shall be permitted to manage and conduct causes therein*."

14.)    The *Constitution of the State of Connecticut*, reads, *in part*, as follows:
   **CONSTITUTION OF THE STATE OF CONNECTICUT**

**PREAMBLE.**

The People of Connecticut acknowledging with gratitude, the good providence of God, in having permitted them to enjoy a free government; do, in order more effectually to define, secure, and perpetuate the liberties, rights and privileges which they have derived from their ancestors; hereby, after a careful consideration and revision, ordain and establish the following constitution and form of civil government.

**ARTICLE FIRST.**
**DECLARATION OF RIGHTS.**

That the great and essential principles of liberty and free government may be recognized and established,

**WE DECLARE:**

(**Equality of rights**.)
Sec. 1 All men when they form a social compact, **are equal in rights**; and no man or set of men are entitled to exclusive public emoluments or privileges from the community.

**AMENDMENTS TO THE**
**CONSTITUTION OF THE STATE OF CONNECTICUT**

**ARTICLE IV**.

(**Trial by jury**. **Challenging of jurors**.)
Section 19 of article first of the Constitution is amended to read as follows: **The right of trial by jury shall remain inviolate**, the number of such jurors, which shall not be less than six, to be established by law; but no person shall, for a capital offense, be tried by a jury of less than twelve jurors without his consent. In all civil and criminal actions tried by a jury, the parties shall have the right to challenge jurors peremptorily, the number of such challenges to be established by law. The right to question each juror individually by counsel shall be inviolate.

**ARTICLE XXI**.

(**Equal protection**. **No segregation or discrimination**.)
Article fifth of the amendments to the Constitution is amended to read
as follows:

**No person shall be denied the equal protection of the law** nor be
subjected to segregation or discrimination in the exercise or
enjoyment of his or her civil or political rights because of religion,
race, color, ancestry, national origin, sex or physical or mental
disability.

15.)  The *U.S. Supreme Court* decided/ruled/ordered, *in part*, the following:

> *"**The party alleging the mistake** must show exactly in what it consists
> and the correction that should be made. The evidence must be such as
> to leave no reasonable doubt upon the mind of the court as to either of
> these points. **The mistake must be mutual, and common to both
> parties to the instrument.** It must appear that both have done what
> neither intended. **A mistake on one side may be a ground for
> rescinding, but not for reforming, a contract. Where the minds of
> the parties have not met there is no contract, and hence none to be
> rectified**." Moffett, Hodgkins, and Clarke Company v. Rochester, 178
> U.S. 373 (1900).

16.)  In <u>Faretta v. California</u>, 422 U.S. 806 (1975), the *Supreme Court of*

*the United States* stated:

> "***In the federal courts, the right of self-representation has
> been protected by statute since the beginnings of our Nation***.
> *Section 35 of the Judiciary Act of 1789, 1 Stat. 73, 92, enacted
> by the First Congress and signed by President Washington one
> day before the Sixth Amendment was proposed, provided that
> "**in all the courts of the United States, the parties may plead
> and manage their own causes personally** or by the assistance
> of counsel*.""

17.) The *Supreme Court of Connecticut* decided/ruled/ordered, *in part*, the following:

*"Applying these definitions in the present circumstances, **we must decide whether a mortgage deed that contains no description of the mortgaged property can reasonably be held to be "fully drawn with respect to every essential feature thereof." We conclude that it cannot.** Whether we turn to the requirements of our recordation statutes; General Statutes §§ 47-5, 47-10 and 47-36c; or to those of the statute of frauds; General Statutes § 52-550; **it is evident that a mortgage is unenforceable without identification of the mortgaged property.**"* **Please see** *Appellant's Appendix* **– Exhibit 13:** <u>State of Connecticut v. Hahn</u>, 207 Conn. 555 (1988).

18.) The *Supreme Court of Connecticut* decided/ruled/ordered, *in part*, the following:

*"**Reformation is appropriate in cases of mutual mistake**—that is where, in reducing to writing an agreement made or transaction entered into as intended by the parties thereto, through mistake, common to both parties, the written instrument fails to express the real agreement or transaction. 5 Pomeroy, Equity Jurisprudence (2d Ed.) § 2096; 53 C.J. p. 941; Amer. Law Institute Restatement, Contracts, Vol. 2, §§ 504, 505 .... **[R]eformation is also available in equity when the instrument does not express the true intent of the parties owing to mistake of one party coupled with fraud, actual or constructive, or inequitable conduct on the part of the other**. 5 Pomeroy, Equity Jurisprudence (2d Ed.) § 2097; 53 C.J. p. 949...." (Citations omitted.) Home Owners' Loan Corporation v. Stevens, 120 Conn. 6, 9-10, 179 A. 330 (1935). **Here, there was neither claim nor proof of a mutual mistake, fraud or inequitable conduct on the part of either party. Since none of these elements was present, application of the equitable principle of reformation was not proper**."* **Please see** *Appellant's Appendix* **– Exhibit 14:** <u>Harlach v. Metropolitan Property</u>, 221 Conn. 185 (1992).

19.)     The *Supreme Court of Connecticut* decided/ruled/ordered, *in part*, the

following:

> *"The Supreme Court, Mullins, J., held that:*
>
> **no mutual mistake warranted reformation of mortgage, and trial court could not foreclose mortgage without first reforming it**.
>
> *Affirmed."*
>
> *"... that **'[t]he court finds that the plaintiff has not sustained its burden of proving, by clear and convincing evidence, that it [was] entitled to the equitable remedy of reformation of the mortgage deed** .... Accordingly, *756 the court finds the issues on the second count for [the defendant] and against the plaintiff. [Because] the plaintiff failed to present any authority to the court [that] would allow the plaintiff to prevail on the first count [foreclosure claim] in the absence of reformation of the mortgage deed, the court [also] finds the issues on the first count for [the defendant] and against the plaintiff.'"*
>
> **"... properly "declined to grant foreclosure of the mortgage without reformation because it determined that the mortgage [deed], as executed, was a nullity because it secured a nonexistent debt"**; id., at 703, 218 A.3d 596; see id., at 705, 218 A.3d 596; (3) **did not abuse its discretion by declining to reform the mortgage deed because the plaintiff did not meet its burden of proving by clear and convincing evidence that the mortgage deed did not conform to the parties' agreement;** ..."
>
> **"We first consider whether the Appellate Court properly affirmed the judgment of the trial court declining to grant reformation of the mortgage deed."**
>
> **"The defendant counters that the trial court properly refused to reform the mortgage deed on the basis of the court's factual findings. We agree with the defendant."**

"*Reformation is appropriate only when the [contract] executed by the parties does not reflect the agreement the parties actually intended. ...* **Reformation is not granted for the purpose of alleviating a hard or oppressive bargain,** *but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties ...*" (Internal quotation marks omitted.) ARS Investors II 2012-1 HVB, LLC v. Crystal, LLC, 324 Conn. 680, 692–93, 154 A.3d 518 (2017)."

"**"A cause of action for reformation of a contract rests on the equitable theory that the instrument sought to be reformed does not conform to the real contract agreed [on] and does not express the intention of the parties and that it was executed as the result of mutual mistake, or mistake of one party coupled with actual \*759 or constructive fraud, or inequitable conduct on the part of the other.** *... Equity evolved the doctrine because an action at law afforded no relief against an instrument \*\*759 secured by fraud or as a result of mutual mistake. ... The remedy of reformation is appropriate in cases of mutual mistake—that is where, in reducing to writing an agreement made or transaction entered into as intended by the parties thereto, through mistake, common to both parties, the written instrument fails to express the real agreement or transaction. ... In short, the mistake, being common to both parties, effects a result [that] neither intended.*" (Citations omitted; internal quotation marks omitted.) Lopinto v. Haines, 185 Conn. 527, 531–32, 441 A.2d 151 (1981). **Additionally, "[w]here fraud is absent, it must be established that both parties agreed to something different from what is expressed in writing, and the proof on this point should be clear so as to leave no room for doubt."** *(Emphasis omitted; internal quotation marks omitted.)* Id., at 535, 441 A.2d 151. **There is no allegation of fraud in this case.**"

"**"We have stated the standard of proof for reformation in different ways but all with the same substantive thrust: evidence should be clear, substantial and convincing."** (Internal quotation marks omitted.) Id., at 534, 441 A.2d 151. **"This is the quality of the evidence required in cases of this**

*type." Id., at 535, 441 A.2d 151. "The burden of proof on the issue of reformation is [on] the party seeking it." Id."*

*"The court finds that the plaintiff has not sustained its burden of proving, by clear and convincing evidence, that it is entitled to the equitable remedy of reformation of the mortgage deed .... Accordingly, the court finds the issues on the second count for [the defendant] and against the plaintiff."*

*"… as the trial court correctly noted, the evidence presented on that specific question fell short of the very high burden required to demonstrate mutual mistake."*

*"This court repeatedly has warned that the power of courts to reform written instruments is one that should be exercised cautiously. See, e.g., Lopinto v. Haines, supra, 185 Conn. at 539, 441 A.2d 151 ("[t]his standard of proof should operate as a weighty caution upon the minds of all judges, and it forbids relief whenever the evidence is \*768 loose, equivocal or contradictory" (internal quotation marks omitted)); see also, e.g., Philippine Sugar Estates Development Co., Ltd. v. Philippine Islands, 247 U.S. 385, 391, 38 S. Ct. 513, 62 L. Ed. 1177 (1918) (stating that reformation will not be granted "unless the proof of mutual mistake [is] of the clearest and most satisfactory character" (internal quotation marks omitted)); cf. 1 Restatement (Second), Contracts § 155, comment (c), p. 410 (1981) ("[b]ecause experience teaches that mistakes are the exception and not the rule ... [c]are is all the more necessary when the asserted mistake relates to a writing, because the law of contracts ... attaches great weight to the written expression of an agreement")."*

*"To be sure, identifying the obligation secured by a mortgage deed is not a technical or scrivener's error. Reforming the mortgage deed in the manner sought by the plaintiff without establishing that the change effects the original intention of the parties changes the defendant's \*769 obligations and creates a new contract between her and the plaintiff. This court has cautioned that "[a]n obstacle to reformation [that] we find insurmountable arises from the fundamental principle*

12

*that there can be no reformation unless there is an antecedent agreement upon which the minds of the parties have met. The relief afforded in reforming an instrument is to make it conform to the previous agreement of the parties." Hoffman v. Fidelity & Casualty Co. of New York, 125 Conn. 440, 443, 6 A.2d 357 (1939). Consequently, "a definite agreement on which the minds of the parties have met must have [preexisted] the instrument in question." Id. It is axiomatic that a "court cannot supply an agreement [that] was never made, for it is [a court's] province to enforce contracts, not to make or alter them."*

*"The defendant had no burden to demonstrate what other purpose or intent motivated her to sign the mortgage deed. It is the plaintiff, as the party seeking reformation, that must prove the preexisting agreement that it seeks to effectuate, and it must do so by clear and convincing evidence. It did not do so to the satisfaction of the trial court, and we cannot conclude that the trial court's findings in this regard were clearly erroneous."*

*"Thus, we conclude that the Appellate Court properly upheld the trial court's decision to decline to reform the mortgage deed."*

*"The defendant counters that the plaintiff cannot foreclose the mortgage without reformation. We agree with the defendant."*

*"The Appellate Court reasoned: "In reviewing the [trial] court's memorandum of decision and subsequent rulings on the plaintiff's motions, it is clear that it declined to grant foreclosure of the mortgage without reformation because it determined that the mortgage [deed], as executed, was a nullity because it secured a nonexistent debt." *772 JPMorgan Chase Bank, National Assn. v. Virgulak, supra, 192 Conn. App. at 703, 218 A.3d 596. Accordingly, like the Appellate Court majority, we cannot conclude that the plaintiff was entitled to foreclose a mortgage for a debt for which the defendant was*

***not responsible and that was not referenced in the mortgage deed."***

**Please see *Appellant's Appendix* – Exhibit 15:** <u>*JPMorgan Chase Bank v. Robert J. Virgulak, et al.*</u>, 341 Conn. 750 (2022).

20.)     The *United States Court of Appeals for the Second Circuit*

decided/ruled/ordered, *in part*, the following:

"***Impossibility caused by a judicial order prohibiting performance will excuse a party's performance only if the fault of the party owing performance did not contribute to the order***."

*Lowenschuss v. Kane*, 520 F.2d 255 (1975)

21.)     **28 U.S. Code § 1331** (*Federal Question*)

22.)     **28 U.S. Code § 1332** (*Diversity of Citizenship and Amount in Controversy*)

23.)     **28 U.S. Code § 1343** (*Civil Rights and Elective Franchise*)

24.)     **42 U.S.C. § 1983** (*Civil Action for Deprivation of Rights*)
*Monell v. New York Department of Social Services,* 436 U.S. 658, 691 (1978).

25.)     **42 U.S.C. § 1985** (*Conspiracy to Interfere with Civil Rights*)

**(3) DEPRIVING PERSONS OF RIGHTS OR PRIVILEGES**

If two or more persons in any State or Territory conspire …, for the purpose of depriving, either directly or indirectly, any person or class of persons of ***the equal protection of the laws***,

or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory ***the equal protection of the laws***; … in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

26.)     **42 U.S.C. § 1986** (*Action for Neglect to Prevent*)

27.)     **42 U.S.C. § 1988** (*Proceedings in Vindication of Civil Rights*)

28.)     **28 U.S. Code § 1654 – Appearance personally or by counsel**, reads, as follows:

> "***In all courts of the United States the parties may plead and conduct their own cases personally*** *or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein*."

29.)     **28 U.S. Code § 1291 – Final decisions of district courts**, reads, in part, as follows:

> *"The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States …"*

30.)    **28 U.S.C. § 1292 – Interlocutory Decisions of District Courts**,

reads, in part, as follows:

> **(a)** Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:
>
> **(1)** Interlocutory orders of the district courts of the United States … of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions …

31.)    **Collateral Order Doctrine**

The *collateral order doctrine* is an exception to the general rule against allowing interlocutory appeals (appeals on a *temporary* order issued during the course of litigation). This doctrine traces its origins to the case *Cohen v. Beneficial Loan Co.*

As a general rule, only final judgements are appealable. Nonetheless, as noted in *Cohen v. Beneficial Loan Co.*, some interlocutory decisions ***act as final judgments to certain rights***. Therefore, interlocutory decisions are appealable under the *collateral order doctrine* if they fulfill three conditions:

1.  The interlocutory decision conclusively determined the disputed question.

2.  The disputed question is important and entirely separable from the merits of the action.

3.  The interlocutory decision is effectively unappealable after a final judgment is handed down.

**Please see *Appellant's Appendix*: Exhibit 21** – *Civil Interlocutory*

*Appeals in Federal Court*

32.)     **Ripeness Doctrine**

        **Please see *Appellant's Appendix*: Exhibit 22** – *Overview of*

        *Ripeness Doctrine*

33.)     **Judicial Impossibility Doctrine**

        "***Impossibility caused by a judicial order prohibiting performance will excuse a party's performance only if the fault of the party owing performance did not contribute to the order***."

        *Lowenschuss v. Kane*, 520 F.2d 255 (1975)

        **Please see *Appellant's Appendix*: Exhibit 23**

34.)     The *Federal Rules of Civil Procedure*: Rule 8(a)(1)(2)(3) states:

        (a) CLAIM FOR RELIEF. A pleading that states a claim for relief must contain:

            (1) **a short and plain statement** of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

            (2) **a short and plain statement** of the claim showing that the pleader is entitled to relief; and

            (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

35.)     The **Connecticut Attorney's Oath** reads as follows:

        *"You solemnly swear or solemnly and sincerely affirm, as the case may be, that you will do **nothing dishonest**, and will not knowingly allow **anything dishonest** to be done in court, and that you will inform*

*the court of **any dishonesty** of which you have knowledge; that you will not knowingly maintain or assist in maintaining any cause of action that is **false** or unlawful; **that you will not obstruct any cause of action for personal gain or malice**; but that you will exercise the office of attorney, in any court in which you may practice, according to the best of your learning and judgment, faithfully, to both your client and the court; so help you God or **upon penalty of perjury**."*

***(General Statutes § 1-25 and annotations.)***

36.) **RULES OF PROFESSIONAL CONDUCT**
**Preamble: A Lawyer's Responsibilities**

*"A lawyer, as a member of the legal profession, is a representative of clients, an officer of the legal system and **a public citizen having special responsibility for the quality of justice**.*

*As **negotiator**, a lawyer seeks a result advantageous to the client **but consistent with requirements of honest dealing with others**."*

37.) **CLIENT-LAWYER RELATIONSHIPS**
**Rule 1.18. Duties to Prospective Client**

(a) A person who consults with a lawyer concerning the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.

(b) Even when no client-lawyer relationship ensues, ***a lawyer who has learned information from a prospective client shall not use or reveal that information***, except as Rule 1.9 would permit with respect to information of a former client.

38.) **RULES OF PROFESSIONAL CONDUCT: RULE 3.1.**
**Meritorious Claims and Contentions**

***"A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact***

*for doing so that is not frivolous, which includes a good faith argument* for an extension, modification or reversal of existing law.".

39.) **RULES OF PROFESSIONAL CONDUCT: RULE 3.3(A)(1). Candor Toward the Tribunal**

*"(a) A lawyer shall not knowingly: (1) Make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."*

40.) **TRANSACTIONS WITH PERSONS OTHER THAN CLIENTS Rule 4.1. Truthfulness in Statements to Others**

*"In the course of representing a client **a lawyer shall not knowingly: (1) Make a false statement of material fact or law to a third person;** or*
***(2) Fail to disclose a material fact when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client,** unless disclosure is prohibited by Rule 1.6."*

"**COMMENTARY: Misrepresentation.**
*A lawyer **is required to be truthful when dealing with others** on a client's behalf, but generally has no affirmative duty to inform an opposing party of relevant facts. **A misrepresentation can occur if the lawyer incorporates or affirms a statement of another person that the lawyer knows is false. Misrepresentations can also occur by partially true but misleading statements or omissions that are the equivalent of affirmative false statements**."*

41.) **RULES OF PROFESSIONAL CONDUCT: RULE 5.1(A). Responsibilities of Partners, Managers, and Supervisory Lawyers**

*"A partner in a law firm, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm, **shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct**."*

42.)     **TRANSACTIONS WITH PERSONS OTHER THAN CLIENTS**
         **Rule 4.1. Truthfulness in Statements to Others**

In the course of representing a client *a lawyer shall not knowingly: (1) Make a false statement of material fact or law to a third person;* or *(2) Fail to disclose a material fact when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client,* unless disclosure is prohibited by Rule 1.6.

**COMMENTARY: Misrepresentation.**
A lawyer *is required to be truthful when dealing with others* on a client's behalf, but generally has no affirmative duty to inform an opposing party of relevant facts. *A misrepresentation can occur if the lawyer incorporates or affirms a statement of another person that the lawyer knows is false. Misrepresentations can also occur by partially true but misleading statements or omissions that are the equivalent of affirmative false statements*.

43.)     **RULES OF APPELLATE PROCEDURE**

**Sec. 60-1. Rules To Be Liberally Interpreted**
The design of these rules being to facilitate business and *advance justice*, they will be interpreted liberally in any appellate matter where it shall be manifest that a strict adherence to them will work surprise or injustice.

44.)     **CODE OF JUDICIAL CONDUCT - PREAMBLE**

(1) *An independent, fair and impartial judiciary is indispensable to our system of justice*. The United States legal system is based on the principle that an independent, impartial, and competent judiciary, composed of men and women of integrity, will interpret and apply the law that governs our society. Thus, *the judiciary plays a central role in preserving the principles of justice and the rule of law*. Inherent in all the Rules contained in this Code are the precepts that judges, individually and collectively, *must respect and honor the judicial office as a public trust and strive to maintain and enhance confidence in the legal system*.

# TABLE OF AUTHORITIES

*The Holy Scriptures (5 Verses)* – 1611 King James Version …….………….… 4

*Common Law Maxims (2)* …………………………………………………… 5

*The Declaration of Independence* ……………………………….…….………5

*The Constitution of the United States (1st, 5th, 14th Amendments)* ………..……… 5

*The Constitution of the United States*: *Freedom to Contract Clause* …………….. 6

*The Judiciary Act of 1789 - SEC. 35*. ………………………………………….. 6

*Constitution of the State of Connecticut* ………………………………………….. 6

<u>*Moffett, Hodgkins, and Clarke Company v. Rochester*</u>, 178 U.S. 373 (1900). …..... 8

<u>*Faretta v. California*</u>, 422 U.S. 806 (1975). ……………………………………… 8

<u>*State of Connecticut v. Hahn*</u>, 207 Conn. 555 (1988). …........................................ 9

<u>*Harlach v. Metropolitan Property*</u>, 221 Conn. 185 (1992). …............................... 9

<u>*JPMorgan Chase Bank v. Robert J. Virgulak, et al.*</u>, 341 Conn. 750 (2022). …..... 10

<u>*Lowenschuss v. Kane*</u>, 520 F.2d 255 (2d Cir. 1975). ............................................ 14

## STATUTES:

28 U.S. Code § 1654 – Appearance personally or by counsel ………………….. 15

28 U.S. Code § 1291 – Final decisions of district courts ……………...…..… 15

28 U.S.C. § 1292 – Interlocutory Decisions of District Courts …………………. 16

## DOCTRINES:

*Collateral Order Doctrine* …………………………………………………....… 16

*Ripeness Doctrine* ……………………….………………...…....… Exhibit 22

*Judicial Impossibility Doctrine* ……………………………………....… Exhibit 23

## FEDERAL RULES OF CIVIL PROCEDURE:

*Federal Rules of Civil Procedure* – Rule 8(a)(1)(2)(3) …………...…...………... 17

## OATH:

*Connecticut Attorney's Oath* …………...……………………….…………... 17

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION
*[Bold italic added throughout document for emphasis].*

The *jurisdiction* of the *United States District Court District of Connecticut* is invoked pursuant to: **28 U.S. Code § 1331** (*Federal Question*); **12 U.S.C. § 38** (*The National Bank Act*); **15 U.S.C. §§ 1601-1667f** (*Truth in Lending Act*); **15 U.S.C. § 1692** (*Fair Debt Collection Practices Act*); **42 U.S.C. §§ 3601-3631** (*The Fair Housing Act*); **15 U.S.C. § 1125** (*The Lanham Act*); **42 U.S.C. § 1985** (*Conspiracy to Interfere with Civil Rights*), and **28 U.S. Code § 1332** (*Diversity of Citizenship; and amount in controversy*).

The *jurisdiction* of this *United States Court of Appeals for the Second Circuit* is invoked pursuant to: **28 U.S. Code § 1291** (*Final decisions of district courts*); **28 U.S.C. § 1292** (*Interlocutory Decisions of District Courts*); the **Collateral Order Doctrine** (*act as final judgments to certain rights*); **Ripeness Doctrine** (*court orders are premature, and/or without proper and lawful jurisdiction*); and **Judicial Impossibility Doctrine** (*court orders are an impossibility*).

The *United States District Court District of Connecticut* (USDC) on October 27, 2023, despite pending appeals in both state and federal court, and being under federal Chapter 13 bankruptcy protection, ***ordered*** the *pro se* Plaintiff-Appellant by *date certain* to file an *Amended Complaint* with specific ***premature and impossible***

23

stipulations/requirements [District ECF No. 200 & 201]. On November 17, 2023, the *pro se* Plaintiff-Appellant filed a *Notice of Appeal* [District ECF No. 203] with the *United States Court of Appeals for the Second Circuit*.

This Court has jurisdiction over these ***interlocutory appeals*** based on the *facts and the law* that the *specified orders* being appealed under **28 U.S. Code § 1291**, *act as final decisions*; and/or under **28 U.S. Code § 1292**, *act as* an *injunction* (by *date certain* to file an *Amended Complaint* with specific ***premature and impossible*** stipulations/requirements); and/or under the **Collateral Order Doctrine**, *act as final judgments to certain rights* (denial of 1st, 5th, and 14th Amendment rights); and/or under the **Ripeness Doctrine**, ***act as premature*** *final judgments to certain rights* (denial of 1st, 5th, and 14th Amendment rights); and/or under the **Judicial Impossibility Doctrine**, ***act as impossible*** *final judgments to certain rights* (denial of 1st, 5th, and 14th Amendment rights).

In addition, and once again, despite pending appeals in both state and federal court, and being under federal Chapter 13 bankruptcy protection, the *United States District Court District of Connecticut* (USDC) on December 13, 2023, ***issued*** a *partial final judgement* against the *pro se* Plaintiff-Appellant [District ECF No. 205]. Moreover, and again, despite pending appeals in both state and federal court, and being under federal Chapter 13 bankruptcy protection, the *United States*

*District Court District of Connecticut* (USDC) on December 15, 2023, ***issued*** a *partial final judgement* against the *pro se* Plaintiff-Appellant [District ECF No. 206]. On December 18, 2023, the *pro se* Plaintiff-Appellant filed an *Amended Notice of Appeal* [District ECF No. 207] with the *United States Court of Appeals for the Second Circuit*.

Similarly, this Court has jurisdiction over these ***partial final appeals*** based on the *facts and the law* that the *specified orders* being appealed under **28 U.S. Code § 1291**, ***act as*** *final decisions*; and/or under **28 U.S. Code § 1292**, ***act as*** an *injunction* (by *date certain* to file an *Amended Complaint* with specific ***premature and impossible*** stipulations/requirements); and/or under the **Collateral Order Doctrine**, ***act as*** *final judgments to certain rights* (denial of 1st, 5th, and 14th Amendment rights); and/or under the **Ripeness Doctrine**, ***act as premature*** *final judgments to certain rights* (denial of 1st, 5th, and 14th Amendment rights); and/or under the **Judicial Impossibility Doctrine**, ***act as impossible*** *final judgments to certain rights* (denial of 1st, 5th, and 14th Amendment rights).

## <u>STATEMENT OF THE ISSUES PRESENTED FOR REVIEW</u>
*[Bold italic added throughout document for emphasis].*

The issues pending before this Court are:

1. Should the four (4) court orders (ECF No. 200, 201, 205, and 206), which ***for all intents and purposes are one and the same***, be remanded back to the USDC for further review and reconsideration, due to the ***Collateral, Ripeness, and Impossibility Doctrines***?

## <u>STATEMENT OF THE CASE</u>
*[Bold italic added throughout document for emphasis].*

On October 27, 2023, despite pending appeals in both state and federal court, and being under federal Chapter 13 bankruptcy protection, the *United States District Court District of Connecticut* (USDC), ***ordered*** the *pro se* Plaintiff-Appellants by *date certain* to file an *Amended Complaint* with specific ***premature and impossible*** stipulations/requirements [District ECF No. 200 and 201].

On November 17, 2023, the *pro se* Plaintiff-Appellant filed a **NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**. District ECF No. [203].

In addition, and once again, despite pending appeals in both state and federal court, and being under federal Chapter 13 bankruptcy protection, the *United States*

*District Court District of Connecticut* (USDC) on December 13, 2023, ***issued*** a *partial final judgement* against the *pro se* Plaintiff-Appellant [District ECF No. 205]. Moreover, and again, despite pending appeals in both state and federal court, and being under federal Chapter 13 bankruptcy protection, the *United States District Court District of Connecticut* (USDC) on December 15, 2023, ***issued*** a *partial final judgement* against the *pro se* Plaintiff-Appellant [District ECF No. 206]. On December 18, 2023, the *pro se* Plaintiff-Appellant filed an *Amended Notice of Appeal* [District ECF No. 207] with the *United States Court of Appeals for the Second Circuit*.

## <u>BACKGROUND</u>
*[Bold italic added throughout document for emphasis].*

1.) *Pro se* Plaintiff-Appellant Gordon Clark (Mr. Clark) and Lillian Clark (Mrs. Clark) were married for 27 years (married on February 14, 1993), and together for *nearly* 30 years, before Mrs. Clark's *tragic and heart-wrenching* passing on October 18, 2020, after a *long, daily, and courageous* 11-year battle with Parkinson's disease, in her *beloved and humble* home of 65 years in Enfield, Connecticut at the age of 92 (nearly 93).

**Please see *Appellant's Appendix*: Exhibit 1** – *Face to the Name*

2.) On or around, November 2009, Mr. Clark's *beloved* wife, Mrs. Clark, was diagnosed with Parkinson's disease.

27

3.) During the last five (5) years of Mrs. Clark's *precious* life, she required nearly 24-hour care.

4.) Mr. Clark became his *beloved* wife's, Mrs. Clark's, full-time caregiver, in an effort to keep her out of a permanent nursing home, and in her *beloved and humble* home of 65 years, that her *beloved* father (Papa) helped her build in the hope of prolonging her life as long as possible, and keeping her from *dying alone*, without Mr. Clark by her side, in a nursing home due to COVID-19 restrictions, *all **only** by His Loving Grace and Mercy*.

5.) Mr. Clark was born in Connecticut, raised in West Hartford, Connecticut, is a *United States Navy veteran*, and once managed over $200 million (over $500 million today) in commercial real estate for *Barclays Bank*. Moreover, Mr. Clark earned an economics degree *with honors* from *Trinity College* in Hartford, where he was *asked* to be the teaching assistant for the *Finance* class, as well as *asked* to be the teaching assistant for the *Money & Banking* class. Mr. Clark also completed his *Senior Thesis*, which was approximately 200 pages in length on *Property Rights*. Furthermore, Mr. Clark earned an MBA from the most competitive business school in the country *at the time*. Additionally, Mr. Clark was a *carpenter* in his youth.

6.) The *Estate of Lillian J. Clark* is ***presently pending*** before Judge Carolyn L. McCaffrey of the *Court of Probate, North Central Connecticut, District No. PD11*.

7.) Mr. Clark is also his wife's, Mrs. Clark's, executor of her estate, and was appointed the executor of the *Estate of Lillian J. Clark* on August 6, 2021, by the *Court of Probate, North Central Connecticut, PD11* (**Please see Appellant's Appendix: Exhibit 2** – Gordon Clark's *Court Sealed Fiduciary's Probate Certificate*).

8.) Mr. Clark was bequeathed *in its entirety*, through Lillian Clark's *Last Will and Testament*, her *beloved and humble* home of 65 years that her *beloved* Papa helped her build in 1955.

9.) Defendant-Appellee *Santander Bank, N.A.*, is a subsidiary of Spain-headquartered parent company, *Banco Santander, S.A.*, that operates branch locations in nine (9) U.S. states on the east coast, and is headquartered in Boston, Massachusetts.

10.) Defendant-Appellee *Santander Bank, N.A.* has never recovered from the *financial and real estate crisis* of 2008, and it *appears* to be on the verge of *bank insolvency*. Case in point, *Santander Bank, N.A.'s* stock

(SAN) trades in **half-cent** increments. Defendant-Appellee *Santander Bank, N.A.'s* stock (SAN) trades *like* a *penny stock* and/or a *pink sheet stock*, due to **over a decade of mismanagement** from at least the time of the *2008 Financial Crisis*. The stock closed on February 29, 2024, at **$4.11**, and may be looking to test its *37-year low* of approximately **$1.78** per share or *possibly* even lower, that is, *if and when* there is another financial crisis.

11.) Defendant-Appellee *Santander Bank, N.A.'s* (SAN) stock is trading at a *near 37-year low*, while the *overall stock market* and other bank stocks like *JPMorgan Chase* are at *all-time highs*, and are expanding their number of bank locations, despite the growth of online banking, while Defendant-Appellee *Santander Bank, N.A.* continues to close down *more and more* of their bank branches.

12.) Defendant-Appellee *Santander Bank, N.A.* is closing an *ever-increasing* number of bank branches, two (2) out of three (3) in the Enfield, Connecticut area *alone* have recently closed, including the bank branch (previously located at 800 Enfield Street, Enfield, CT 06082) where Mr. Clark was *repeatedly defrauded,* and racially discriminated against; and with Defendant-Appellee *Santander Bank,*

*N.A.'s* recent *abrupt, sudden, inexplicable, and public* decision to exit the *home lending market* announced on February 2, 2022, Defendant-Appellee *Santander Bank, N.A.* will *probably* continue to close additional bank branches, *that is*, until all branches are *most likely* closed in the United States, and *likely* shortly before claiming insolvency and filing for bankruptcy (**Please see *Appellant's Appendix*: Exhibit 3** – *Santander Bank branch closings article*).

13.) The *investment institutions*, along with Defendant-Appellee *Santander Bank, N.A.'s* own customers are not willing to invest in Defendant-Appellee *Santander Bank, N.A.'s* failing and unprofitable business model and *extremely* poor *so-called* customer service.

• Percentage of *Santander Bank, N.A.* (SAN) stock held by institutions is approximately **2.43%**.

• Percentage of *Wells Fargo* (WFC) stock held by institutions is approximately **77.10%**.

• Percentage of *JPMorgan Chase* (JPM) stock held by institutions is approximately **73.20%**.

14.) Defendant-Appellee *Wells Fargo & Company* (WFC) who has had *major regulatory fines* of approximately $5 billion over the past five (5) years, and *publicly admitting* more are *on the horizon*, and with

rising legal costs of around $3 billion is still around 15% from their *all-time high stock price*, yet Defendant-Appellee *Santander Bank, N.A.'s* stock continues to trade near its 37-year low.

15.) On May 20, 2020, it was reported by *The Wall Street Journal* that *Santander Consumer USA Holdings, Inc's*, which is **also** a subsidiary (as is *Santander Bank, N.A.*) of Spain-headquartered parent company, *Banco Santander, S.A.*, had reached a $550 million settlement with nearly three dozen *U.S. states attorney generals* to settle charges of *predatory auto lending* to low-income and subprime borrowers (**Please see *Appellant's Appendix*: Exhibit 4 –** *Wall Street Journal* article: *Santander Settles Predatory Auto-Lending Claims for $550 million*).

16.) Based on Defendant-Appellee *Santander Bank, N.A.'s* recent settlement of *predatory lending claims* with thirty-five (35) States, if one includes Defendant-Appellee *Santander Bank, N.A.'s* 2017 settlement with Delaware and Massachusetts, as well as with the *District of Columbia*. Clearly, *obeying the law, **is not a priority*** for Defendant-Appellee *Santander Bank, N.A.*

17.) On or around February 2, 2022, Defendant-Appellee *Santander Bank,*

*N.A.*, ***abruptly, suddenly, inexplicably, and publicly*** announced their *exit* from the *U.S. Residential Mortgage and HELOC* lending market, which was only twenty-three (23) days ***after*** the *pro se* Plaintiff-Appellant filed a *Complaint* with the *United States District Court District of Connecticut* on January 10, 2022 (**Please see *Appellant's Appendix*: Exhibit 5** – *Santander Bank's exit from mortgage market article*).

18.)     Shortly after February 3, 2022, *pro se* Plaintiff-Appellant received via *USPS First Class Mail* a *notification letter* from Defendant-Appellee *Santander Bank, N.A.* of their said ***abrupt, sudden, inexplicable, and public*** decision to *exit* from the *U.S. Residential Mortgage and HELOC* lending market ***starting*** on February 11, 2022 (**Please see *Appellant's Appendix*: Exhibit 5** – *Santander Bank's exit from mortgage market letter*).

19.)     On February 9, 2022, the *Philadelphia Business Journal* published an article that Defendant-Appellee *Santander Bank, N.A.*, had announced the *layoffs/firings* of approximately ***400 employees*** due to their ***abrupt, sudden, inexplicable, and public*** *exit* from the *U.S. Residential Mortgage and HELOC* lending market (**Please see**

*Appellant's Appendix***: Exhibit 5** – *Santander Bank's exit from mortgage market article*).

20.)     On February 11, 2022, *pro se* Plaintiff-Appellant *electronically* filed with the *USDC in Hartford* an *Emergency Motion for Defendant Santander Bank, N.A. to Preserve All U.S. Residential Mortgage and HELOC Records, and All Related Employment Records*.  District ECF No. [46].

21.)     As of February 11, 2022, the date of Defendant-Appellee *Santander Bank, N.A.'s abrupt, sudden, inexplicable, and public* decision to exit from the ***historic, record breaking and booming*** home lending market, Defendant-Appellee *Santander Bank, N.A.* has become a shell of its former self, by cannibalizing itself, in a *desperate effort* to raise cash in an ongoing attempt to further delay their *likely* financial reckoning/collapse/insolvency.

22.)     Shortly after May 1, 2019, Mrs. Clark received an *erroneous, baseless, and meritless foreclosure letter* addressed to Lillian Byron, **not Lillian Clark**, from *Santander Bank, N.A.* threatening to foreclose on Mrs. Clark's humble home of 65 years, that her *beloved* father (Papa) helped her build, that she *never* wanted to move from,

when we had ***never*** missed a payment and were presently ***current*** on our property taxes, demanding an extortionist lump sum payment of $37,575.86 in less than 20 days, all while Mr. Clark's *beloved* Lilli was battling *daily* for her *precious* life (**Please see *Appellant's Appendix*: Exhibit 6** – *Santander Bank, N.A.'s May 1, 2019 foreclosure letter*).

23.) On November 22, 2019, Defendant-Appellee *Santander Bank, N.A.*, filed a *2-count Complaint* (foreclosure lawsuit) against Mrs. Clark and the *pro se* Plaintiff-Appellant with the *Superior Court of Connecticut* (**Please see *Appellant's Appendix*: Exhibit 8** – *Santander Bank, N.A.'s Complaint*).

24.) *Count 1* of said Defendant-Appellee *Santander Bank, N.A.'s 2-count Complaint* is: *Reformation of Mortgage*; and *Count 2* of said Defendant-Appellee *Santander Bank, N.A.'s 2-count Complaint* is: *Foreclosure of the Mortgage as Reformed*.

25.) On April 29, 2022, the *pro se* Plaintiff-Appellant filed **DEFENDANTS' ANSWER, AFFIRMATIVE/SPECIAL DEFENSES, COUNTERCLAIM, AND JURY DEMAND** with the

*Superior Court of Connecticut* (**Please see** *Appellant's Appendix***:**

**Exhibit 9** – *Defendants Answer and Jury Demand*).

26.)     On April 10, 2023, Defendant-Appellee *Santander Bank, N.A.*,

through its attorney Defendant-Appellee Jeffrey M. Knickerbocker

filed with the *Superior Court of Connecticut* a ***fraudulent*** *Certificate*

*of Closed Pleadings* ***falsely*** claiming a ***non-jury trial*** (**Please see**

*Appellant's Appendix***: Exhibit 11** – *Certificate of Closed Pleadings*).

27.)     On May 2, 3, and 4, 2023, the *Superior Court of Connecticut*

conducted a *Remote Court Trial*, where Mr. Clark was ***repeatedly,***

***unjustly, and unlawfully denied his due process of law rights***, all of

which Mr. Clark opposed/objected, including, but not limited to the

denial of ***any and all exhibits***, ***the denial of any and all witnesses***,

and Mr. Clark's ***constitutional right to a jury trial enshrined in the***

***Constitution of the State of Connecticut*** (**Please see** *Appellant's*

*Appendix***: Exhibit 12** – *Closing Statement*).

28.)     Despite Defendant-Appellee *Santander Bank, N.A.'s*, and its attorneys

***ongoing efforts to deceive, obfuscate, and to evade the material facts***

***and relevant law in this case***, they will ***never be able to change nor***

**honestly deny any of the simple and basic material facts in this case**, some of which are:

1. The *pro se* Plaintiff-Appellants had ***never missed a payment before*** receiving Defendant-Appellee *Santander Bank, N.A.'s erroneous, baseless, and meritless* foreclosure letter dated May 1, 2019, ***inexplicably*** addressed to Lillian Byron, ***not to Lillian Clark***, *threatening to foreclose* if an *extortionist lump sum payment* of **$37,575.86** was not paid *in less than 20 days*, by May 20, 2019 (**Please see Appellant's Appendix: Exhibit 6** – *Santander Bank, N.A.'s May 1, 2019 foreclosure letter*).

2. The *pro se* Plaintiff-Appellants were ***current on their property taxes*** *before* receiving Defendant-Appellee *Santander Bank, N.A.'s erroneous, baseless, and meritless* foreclosure letter dated May 1, 2019, ***inexplicably*** addressed to Lillian Byron, ***not to Lillian Clark***, *threatening to foreclose* if an *extortionist lump sum payment* of **$37,575.86** was not paid *in less than 20 days*, by May 20, 2019 (**Please see Appellant's Appendix: Exhibit 7** – *Town of Enfield – Zero Property Taxes due*).

3. Defendant-Appellee *Santander Bank, N.A.*, has knowingly or unknowingly ***admitted against interest*** that they have an ***invalid, unenforceable, and unreformable*** *alleged mortgage* that contains ***no valid legal property description whatsoever***; and therefore, ***was not and could not be in default*** on or around May 1, 2019, which *cannot be lawfully amended/reformed without the pro se Plaintiff-Appellant's consent* (**Please see** *Appellant's Appendix***: Exhibit 8** – *Santander Bank, N.A.'s Complaint – Page 1, Paragraph 3*).

4. Defendant-Appellee *Santander Bank, N.A.*, has ***admitted against interest*** that they have made ***no claims of fraud***, ***nor of mutual mistake*** against the *pro se Plaintiff-Appellant* (**Please see** *Appellant's Appendix***: Exhibit 10** – *Santander Bank, N.A.'s Reply – Page 2, Paragraph 4*).

29.) As *Saint Paul*, formerly known as *Saul of Tarsus*, wrote to *Saint Timothy* nearly 2,000 years ago, ***after*** *Saint Paul's conversion and repentance* on the *Road to Damascus*:

   ***"For the love of money is the root of all evil …"***

   1 Timothy 6:10

## STATEMENT OF THE FACTS

*[Bold italic added throughout document for emphasis].*

1.) Gordon and Lillian Clark (our/we) are *devoted people of faith* (*albeit imperfect, and still in lifelong/eternal process*), but ***not*** in the *all-too-common* American manner of today, that is *tragically and sadly* on display *for all the world to see* in our *beloved*, yet lost and broken, *United States (Divided States) of America*. For example, we *abhor and find sickening* people like Trump and Guiliani who have ***used, abused, and hijacked*** our *Scriptural faith* for the love of money, power, and fame. And we ***stand with and defend*** all women's *right to choose*, to their reproductive rights, and to their bodily autonomy. Our *Scriptural* faith can be best described as aligning with the *Black Church*, and Judaism.

2.) Days before February 14, 1993 (Gordon and Lillian Clark's wedding day), *unbeknownst* to Mr. Clark, his fiancée, Lillian, had three (3) words inscribed into our wedding bands, which were, "***We Are One***" and are a reference to *Scripture verses* (Genesis 2:24 and Mark 10-7-9) listed above.

3.) On January 10, 2022, the *pro se* Plaintiff-Appellant filed a **COMPLAINT** with the *United States District Court District of Connecticut*. District ECF No. [1].

4.) Mr. Clark in *good faith* has contacted and interviewed more than a dozen (12+) attorneys seeking an *honest, competent, affordable, and trustworthy litigator*. To Mr. Clark's **shock, surprise, and horror** one (1) of the said prospective attorneys, a *prominent and experienced* Connecticut foreclosure attorney **boldly, unapologetically, unashamedly, with impunity, and against interest** told Mr. Clark over the phone approximately three (3) years ago that, "***The facts do not matter, because the courts favor the banks***."

5.) In addition, another *prospective attorney* (who had not been hired) after spending over six (6) hours (phone, Zoom, and face to face for over 4 hours) discussing **confidential and private information** with Mr. Clark, **dishonorably, dishonestly, and unlawfully** contacted opposing counsel, **without Mr. Clark's knowledge nor consent** in a deceitful plan to pressure Mr. Clark to withdraw his pending USDC lawsuit. All of which, when discovered by Mr. Clark, called for immediate action, that resulted in a **cease-and-desist letter** to said prospective attorney, and the filing of **PLAINTIFFS' MOTION FOR SANCTIONS AGAINST ATTORNEYS RIDGELY WHITMORE BROWN AND SEAN R. HIGGINS, AND POSSIBLY ALSO AGAINST ATTORNEYS JEFFREY M. KNICKERBOCKER AND PATRICK TRACEY, BASED ON SWORN**

**TESTIMONY AND EVIDENCE PRESENTED AT PUBLIC HEARING**.  District ECF No. [97].

6.) Mr. Clark also in *good faith* has also participated in a so-called *Settlement Conference* ordered by the USDC, which was ***initiated*** by the Defendant-Appellee *Santander Bank, N.A.*; however, the Defendants-Appellees ***did not*** act in good faith.  All of which, caused Mr. Clark to file **PLAINTIFFS' EMERGENCY MOTION FOR SETTLEMENT CONFERENCE WITH DIFFERENT USDC MAGISTRATE JUDGE**.  District ECF No. [166].

7.) On July 13, 2022, the *United States District Court District of Connecticut* (USDC) ***ordered*** the *pro se* Plaintiff-Appellants to obtain legal counsel by *date certain* to represent *all of the estate-based* claims or said claims would be dismissed, which is pending appeal (22-2965), and set for oral argument on March 20, 2024.  District ECF No. [133].

8.) On July 27, 2022, the *pro se* Plaintiff-Appellant filed a **MOTION FOR RECONSIDERATION-REARGUMENT OF COURT ORDER (DOCUMENT 133)**.  District ECF No. [135].

9.) On October 13, 2022, the USDC **granted** the *pro se* Plaintiff-Appellant's *Motion to Reconsider* but **denied** relief.  District ECF No. [154].

10.)      On October 21, 2022, the *pro se* Plaintiff-Appellant filed a new **MOTION FOR RECONSIDERATION-REARGUMENT OF COURT ORDER (DOCUMENT 154)**.  District ECF No. [157].

11.)      On October 28, 2022, the USDC **denied** the *pro se* Plaintiff-Appellant's *Motion to Reconsider*.  District ECF No. [159].

12.)      On November 17, 2022, the *pro se* Plaintiff-Appellant filed a **NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**.  District ECF No. [172].

13.)      On August 16, 2023, the *pro se* Plaintiff-Appellant filed a **JUDICIAL NOTICE OF PRO SE PLAINTIFF'S CHAPTER 13 BANKRUPTCY FILING**.  District ECF No. [196].  **Please see** *Appellant's Appendix***: Exhibit 16**.

14.)      On August 16, 2023, the *pro se* Plaintiff-Appellant filed a **BRIEF CONCERNING PRECLUSION DOCTRINES OF COLLATERAL ESTOPPEL OR RES JUDICATA IN THIS**

**INSTANT ACTION**.  District ECF No. [197].  **Please see**
***Appellant's Appendix*: Exhibit 17**.

15.)     On August 18, 2023, the *pro se* Plaintiff-Appellant filed a
**JUDICIAL NOTICE OF PRO SE PLAINTIFF'S ADVERSARY**
**PROCEEDING COMPLAINT FILING**.  District ECF No. [198].
**Please see *Appellant's Appendix*: Exhibit 18**.

16.)     On October 27, 2023, despite pending appeals in both state and
federal court, and being under federal Chapter 13 bankruptcy
protection, the *United States District Court District of Connecticut*
(USDC), ***ordered*** the *pro se* Plaintiff-Appellants by *date certain* to
file an *Amended Complaint* with specific ***premature and impossible***
stipulations/requirements [District ECF No. 200 and 201].

17.)     On November 17, 2023, the *pro se* Plaintiff-Appellant filed a
**NOTICE OF APPEAL TO THE UNITED STATES COURT OF**
**APPEALS FOR THE SECOND CIRCUIT**.  District ECF No.
[203].

18.)     In addition, and once again, despite pending appeals in both state and

federal court, and being under federal Chapter 13 bankruptcy protection, the *United States District Court District of Connecticut* (USDC) on December 13, 2023, *issued* a *partial final judgement* against the *pro se* Plaintiff-Appellant [District ECF No. 205]. Moreover, and again, despite pending appeals in both state and federal court, and being under federal Chapter 13 bankruptcy protection, the *United States District Court District of Connecticut* (USDC) on December 15, 2023, *issued* a *partial final judgement* against the *pro se* Plaintiff-Appellant [District ECF No. 206].

19.)     On December 18, 2023, the *pro se* Plaintiff-Appellant filed an *Amended Notice of Appeal* [District ECF No. 207] with the *United States Court of Appeals for the Second Circuit*.

20.)     On February 29, 2024, the *pro se* Plaintiff-Appellant filed a **MOTION FOR A WRIT OF MANDAMUS TO COMPEL THE CONSTITUTIONAL AND INVIOLATE RIGHT TO A JURY TRIAL** with the *Supreme Court of Connecticut* (SC 230194).  **Please see *Appellant's Appendix*: Exhibit 19**.

21.)     On February 29, 2024, the *pro se* Plaintiff-Appellant filed a

**MOTION FOR RECONSIDERATION OF PETITION TO THE SUPREME COURT OF CONNECTICUT BY CERTIFICATION FOR REVIEW** with the *Supreme Court of Connecticut* (SC 230195). **Please see *Appellant's Appendix*: Exhibit 20**.

22.)    *Pro se* Plaintiff-Appellant Gordon Clark (Mr. Clark), ***strives daily to keep His Commandments***, five (5) of which are referenced above in the *Memorandum of Law*, and *all of which* can be found in the 1611 King James Version (KJV) of the *Holy Scriptures*.

23.)    Mr. Clark was born in Connecticut and is a United States and Connecticut citizen, a *United States Navy* veteran, and a *nearly lifelong resident* of the beautiful and great *State of Connecticut*.

24.)    Mr. Clark ***invokes and stands upon*** the aforementioned *Commandments* and laws referenced above in the *Memorandum of Law* concerning this appeal before this Court. Which includes but are not limited to *Holy Scriptures* - Genesis 2:24 and Mark 10:7-9 (**eternal marital bond**); *The Declaration of Independence* (**endowed by their Creator with certain *unalienable* Rights**); *The Constitution of the United States* (1ˢᵗ Amendment - **free exercise of religion**, and **to petition the government for a redress of grievances**; 5ᵗʰ

45

Amendment - **due process of law**; and 14th Amendment - **equal protection of the laws**; *The Judiciary Act of 1789 - SEC. 35* (**the parties may plead and manage their own *causes* personally**); *Faretta v. California* (**In the federal courts, the right of self-representation has been protected by statute since the beginnings of our Nation**); *28 U.S. Code § 1654* (**In all courts of the United States the parties may plead and conduct their own cases personally**); *Collateral Order Doctrine* (***act as final judgments to certain rights***); *Ripeness Doctrine*, ***act as premature*** *final judgments to certain rights* (denial of 1st, 5th, and 14th Amendment rights); and/or the **Judicial Impossibility Doctrine**, ***act as impossible*** *final judgments to certain rights* (denial of 1st, 5th, and 14th Amendment rights).

## <u>SUMMARY OF THE ARGUMENT</u>
*[Bold italic added throughout document for emphasis].*

The issues pending before this Court are:

1. Should the four (4) court orders (ECF No. 200, 201, 205, and 206), which ***for all intents and purposes are one and the same***, be remanded back to the USDC for further review and reconsideration, due to the ***Collateral, Ripeness, and Impossibility Doctrines***?

The *pro se* Plaintiff-Appellant, Mr. Clark, believes and *respectfully* asserts, that the **simple one-word answer** to said above question, whether based **solely or collectively** on the *Scriptures*, the historical record, the *Declaration of Independence*, the *Constitution of the United States*, the *Judiciary Act of 1789*, the *Constitution of the State of Connecticut*, federal Statutes, and/or *Supreme Court of the United States*, and *United States Court of Appeals for the Second Circuit* precedents is **unequivocally and definitively**, yes.

### Argument to Remand for Further Review and Reconsideration of Four (4) Court Orders:

1. Court orders were *premature (lack of ripeness)* at best, and/or *without proper and lawful jurisdiction* at worst, due to pending appeals in both state and federal court, and also being under federal Chapter 13 bankruptcy protection.

2. Court orders **could not** be followed by the *pro se* Plaintiff-Appellant, based on the *Judicial Doctrine of Impossibility*, based on four (4) main facts, which are:

    1. Mr. Clark cannot comply with said court orders, that is, *it is an impossibility*, due to the limits placed on Attorney Cat Itaya of the *New Haven Legal Assistance Association's Federal Pro Se Program*, who is unable to assist Mr. Clark in drafting an *Amended Complaint*.

    2. Mr. Clark cannot comply with said court orders, that is, *it is an impossibility*, due to the erroneous limitations placed on filing an *Amended Complaint*, such as, the *premature (lack of ripeness)* finding of *preclusion* when the state court proceedings are not final.

3. Mr. Clark cannot comply with said court orders, that is, *it is an impossibility*, due to the erroneous limitations placed on filing an *Amended Complaint*, such as, the *premature (lack of ripeness)* finding of *litigation privilege* when the state court proceedings are not final.

4. Mr. Clark cannot comply with said court orders, that is, *it is an impossibility*, due to Mr. Clark being under federal Chapter 13 bankruptcy protection.

Additionally, this Court has jurisdiction over these *interlocutory appeals*, as detailed above, based on the *facts and the law* that the orders being appealed ***act as final decisions*** (**28 U.S. Code § 1291**); and/or an *injunction* (**28 U.S. Code § 1292**); and/or *final judgments to certain rights* (**Collateral Order Doctrine**); and/or *court orders are premature, and/or without proper and lawful jurisdiction* (**Ripeness Doctrine**); and/or *court orders are an impossibility* (**Judicial Impossibility Doctrine**).

## <u>ARGUMENT</u>
*[Bold italic added throughout document for emphasis].*

The *pro se* Plaintiff-Appellant continues to stand on ***all previously filed documents*** with the USDC and *Second Circuit*, and more *notably* on five (5) specific filings, which are:

1. **JUDICIAL NOTICE OF PRO SE PLAINTIFF'S CHAPTER 13 BANKRUPTCY FILING**.  District ECF No. [196].  **Please see *Appellant's Appendix*: Exhibit 16**;

2. **BRIEF CONCERNING PRECLUSION DOCTRINES OF COLLATERAL ESTOPPEL OR RES JUDICATA IN THIS INSTANT ACTION**.  District ECF No. [197].  **Please see *Appellant's Appendix*: Exhibit 17**;

3. **JUDICIAL NOTICE OF PRO SE PLAINTIFF'S ADVERSARY PROCEEDING COMPLAINT FILING**.  District ECF No. [198].  **Please see *Appellant's Appendix*: Exhibit 18**;

4. **MOTION FOR A WRIT OF MANDAMUS TO COMPEL THE CONSTITUTIONAL AND INVIOLATE RIGHT TO A JURY TRAIL** with the *Supreme Court of Connecticut* (SC 230194).  **Please see *Appellant's Appendix*: Exhibit 19**; and

5. **MOTION FOR RECONSIDERATION OF PETITION TO THE SUPREME COURT OF CONNECTICUT BY CERTIFICATION FOR REVIEW** with the *Supreme Court of Connecticut* (SC 230195).  **Please see *Appellant's Appendix*: Exhibit 20**.

Additionally, and as detailed above, the *pro se* Plaintiff-Appellant has also cited additional **substantive law** in this *Brief*, which includes, but is not limited to the *Scriptures*, the historical record, the *Declaration of Independence*, the *Constitution of the United States*, the *Judiciary Act of 1789*, the *Constitution of the State of Connecticut*, federal Statutes, and *Supreme Court of the United States* and *United States Court of Appeals for the Second Circuit* precedents in further support of the pending issues in this matter.

The *pro se* Plaintiff-Appellant's (Mr. Clark's) moral, Scriptural, constitutional, civil, and *due process of law* rights **cannot** be lawfully diminished in any *way, shape, or form*; and **certainly not** prematurely, nor **without proper and lawful jurisdiction**, nor by being ordered to do the *impossible*.

Therefore, the Plaintiff-Appellant believes and *respectfully* asserts that it is the *duty and responsibility* of the courts to ensure that **all parties** have their *due process of law rights* **protected and enforced** and **not violated** through **premature** court orders that **lack proper and lawful jurisdiction**, and/or through court orders which are **impossible** for the *pro se* Plaintiff-Appellant to fulfill. Which includes, but is not limited to also having **fair and just access** to the public courts, and **not** to favor (corporations/attorneys) and/or discriminate against any individual or group

who *some* may be inclined to be biased against, such as *pro se* litigants, when there is no just, historical, constitutional, lawful, nor moral basis to do so.

Simply stated, the *pro se* Plaintiff-Appellant has every **substantive law right**, as *repeatedly* cited above to have his *due process of law rights* **protected and enforced** and **not violated** through **premature** court orders that **lack proper and lawful jurisdiction**, and/or through court orders which are **impossible** for the *pro se* Plaintiff-Appellant to fulfill.

More specifically, in said court orders, and in ECF No. 200, the USDC states, *in part*, the following:

> "Thus, Plaintiffs may file an amended complaint by November 27, 2023, without seeking leave of Court, but **must consult** with the Federal Pro Se Program to draft such an amended complaint. Plaintiffs shall title their amended complaint "Fourth Amended Complaint" for ease of reference, and are **warned that they should not include in any amended complaint** any claims under the federal criminal statutes or **any claims that are barred by preclusion doctrines or the litigation privilege**."

Although the *pro se* Plaintiff-Appellant *sincerely* appreciates the USDC, and specifically, Judge Sarala V. Nagala's willingness to allow Mr. Clark to amend his Complaint. **With all due respect** to the USDC and to Judge Nagala, the stipulations/requirements that were attached to said orders were **premature**, and/or **lacked proper and lawful jurisdiction**, based on the aforementioned facts and law, as well as pending appeals in both state and federal court, and being under federal

Chapter 13 bankruptcy protection, as well as said court orders being an *impossibility* for the *pro se* Plaintiff-Appellant to fulfill. Specifically, said orders stated, " … ***must consult*** with the Federal Pro Se Program to draft such an amended complaint." However, as much as *pro se* Plaintiff-Appellant ***welcomes*** any and all assistance from the *New Haven Legal Assistance Association's Federal Pro Se Program*, and from their thoughtful, kind, and brilliant *Federal Pro Se Program* attorney, Ms. Cat Itaya. Ms. Itaya informed Mr. Clark that said *Federal Pro Se Program **does not*** have the authority nor the resources to assist *pro se* litigants with drafting an *Amended Complaint*.

Concerning the *standard of review* in this case, the *pro se* Plaintiff-Appellant believes and asserts that there is a ***mixed standard of review*** of *questions of both fact and law* in this matter. Consequently, said *pro se* Plaintiff-Appellant is requesting that this Court when considering the *questions of fact* (findings of fact), that they ***not*** apply the arbitrary and capricious *standard of review*. Although the *pro se* Plaintiff-Appellant believes and asserts that said USDC rulings concerning questions of fact are, *clearly erroneous*.

In addition, the *pro se* Plaintiff-Appellant believes and asserts that based on the facts and law established in the court record and in this *Brief* that the *Second Circuit* when reconsidering any *questions of law*, should do so under ***de novo***

*review*, based on the facts and law that the *pro se* Plaintiff-Appellant has *presented and invoked*, which will *hopefully* result in a **definite and firm conviction** in favor of the *pro se* Plaintiff-Appellant.

Moreover, as this Court is *certainly more familiar* than the *pro se* Plaintiff-Appellant, in **BOSE CORP. v. CONSUMERS UNION OF US, INC., 466 U.S. 485 (1984)**, *de novo* review is **required** in the United States when issues of *substantive law*, such as *First Amendment* issues are raised on appeal, which is applicable in this case, because the *pro se* Plaintiff-Appellant has raised multiple *Constitutional* issues in this *Brief*.

Furthermore, since this case involves a mix of questions concerning both facts and *substantive law* the *pro se* Plaintiff-Appellant also request that this Court conduct said *de novo review* under **strict scrutiny**.  Especially, since *case law* is **not** immune and/or exempt from judicial review for compatibility with the *Constitution of the United States*.

Sadly, Mr. Clark is well aware from *first-hand experience* of the disdain that *nearly all* of the legal profession has for *pro se* litigants (**present company excluded**).  However, Mr. Clark is *pro se*, not out of choice, but out of necessity, and despite Mr. Clark's ongoing *sincere and good faith* efforts to find an *honest, competent, affordable, and trustworthy litigator*, he has *yet* to find one.

Nonetheless, *and once again*, Mr. Clark is **not required by law** to hire an attorney to pursue his claims, since there is **nowhere** in the *Scriptures*, nor the historical record, nor the *Declaration of Independence*, nor the *Constitution of the United States*, nor the *Judiciary Act of 1789*, nor the *Constitution of the State of Connecticut*, nor federal Statutes, nor in *Supreme Court of the United States* precedents, nor in *United States Court of Appeals for the Second Circuit* precedents that can *morally, ethically, justly, and lawfully* deny, dismiss, and/or extinguish any claims, nor causes, nor lawsuits based **solely** on not being able to find an *honest, competent, affordable, and trustworthy litigator.* More pointedly, and **with all due respect** to this Court, where does it state in the *Scriptures*, the historical record, the *Declaration of Independence*, the *Constitution of the United States*, the *Judiciary Act of 1789*, the *Constitution of the State of Connecticut*, federal Statutes, and/or *Supreme Court of the United States*, and *United States Court of Appeals for the Second Circuit* precedents, that an American citizen has *inalienable, Constitutional, and/or civil rights*, **only if**, they can find an *honest, competent, affordable, and trustworthy litigator* who is willing and able to represent said American's rights and/or interests? As we all know, there is no place in all of American history, and throughout American jurisprudence that makes such an *immoral, unlawful, irrational, illogical, ridiculous, and false* claim. Yet there are *far too many* in the legal profession who *erroneously believe*, that by

creating *vague, irrational, illogical, incomprehensible, and baseless* precedents, which are **not** based in any sound jurisprudence, but instead based on *self-interested bias*, that they can create a *near* monopoly of the public courts, full employment, and *exorbitant* legal fees for their legal colleagues. All while *simultaneously* denying their fellow Americans their inalienable, constitutional, and civil rights as somehow justifiable and lawful when it is **clearly** not. As well as denying their fellow Americans their lawful and just access to the public courts, which Mr. Clark trusts, *until proven otherwise*, that this Court can and will be able to *honorably and rightly* discern, clarify, and correct.

**Please see *Appellant's Appendix*: Exhibit 24** – *Judge Posner retirement article*

It is the *pro se* Plaintiff-Appellant's *sincere* hope and prayer that our *beloved*, yet imperfect judiciary can be reformed from the SCOTUS to the *state trial courts* in a manner that serves **all** Americans, and not just the rich and powerful, and/or billionaire Nazi memorabilia collectors. Until then, if ever, the *pro se* Plaintiff-Appellant is choosing to place his faith and trust, **first and foremost**, in *The Creator of Heaven and Earth*; and secondly, in the **state** appellate/supreme courts, and the **federal** district and appellate courts to continue to *hold the line* for all of us Americans who are praying for and *counting on them*. Mr. Clark also acknowledges, and **sincerely and truly** appreciates this Court and the entire

judiciary for their *honorable, courageous, and tireless hard work*, especially during this *increasingly strenuous and difficult time* in our nation's history. Mr. Clark may be naïve; nevertheless, it is his belief, *until proven otherwise*, that if anyone can begin the ***desperately needed reformation*** of our *beloved*, yet imperfect judiciary, from the SCOTUS to the *state trial courts*, it will come from the great *State of Connecticut* (Constitution State) who is leading the way in *gun reform laws*, and ***also*** through the *United States Court of Appeals for the Second Circuit*, *all by His Loving Grace*.

> **Please see *Appellant's Appendix*: Exhibit 25** – *Access to Justice in the United States*

Finally, the Reverend Dr. Martin Luther King, Jr., stated in his *Letter from Birmingham Jail*, the following, in which the *pro se* Plaintiff-Appellant ***entirely agrees***:

> "*The answer is found in the fact that there are two types of laws: there are **just** laws, and there are **unjust** laws. I would agree with St. Augustine that "**An unjust law is no law at all**.*""

> **Please see *Appellant's Appendix*: Exhibit 26** – *Letter from Birmingham Jail*

Lastly, *for what it is worth*, and so that this Court knows ***without any doubt whatsoever*** who Mr. Clark is *zealously defending*, namely, Mr. Clark's *beloved and precious* wife of 27 years, Lilli-Bella.  Who was/is the *most beautiful woman in the world* to Mr. Clark, and *always* will be, *both inside and outside*, who was/is the *most loving, kind, honest, honorable, humble, wise (**with only a high school education**), courageous, and faithful* woman of *character* that Mr. Clark has *ever* known, and *far stronger* than Mr. Clark will ***ever*** be.

May she … rest in peace … *forever* …

## <u>CONCLUSION</u>
*[Bold italic added throughout document for emphasis].*

WHEREFORE, based on *all the material facts and relevant law* referenced above, and in other relevant court filings, the *pro se* Plaintiff-Appellant, Mr. Clark, *respectfully* appeals to this Court to remand for further review and consideration the *specified orders* of the district court; and ***with all due respect*** to the *gracious, fair-minded, and reasonable* USDC Judge Sarala V. Nagala, with *findings of fact* and *rulings in law* in favor of the *pro se* Plaintiff-Appellant that will allow Mr. Clark to have ***all of his due process of law rights protected and enforced***, including, but not limited to his *individual, spousal, executor, beneficiary, and creditor* interests in ***this pending case***.  Whether based ***solely or collectively*** on the *Scriptures*, the historical record, the *Declaration of Independence*, the *Constitution*

57

*of the United States*, the *Judiciary Act of 1789*, the *Constitution of the State of Connecticut*, federal Statutes, and/or *Supreme Court of the United States*, and *United States Court of Appeals for the Second Circuit* precedents.

Thank you for your time, consideration, and understanding of this *urgent and critically important* legal matter, and blessings *always* to you and yours. Please continue to stay healthy and be safe.

Dated and signed at Enfield, Connecticut, on March 1, 2024, by *pro se* Plaintiff-Appellant Gordon Clark, *in his individual, spousal, executor, beneficiary, and creditor capacities.*

_____
Gordon Clark
(*Husband & Executor of the Estate of Lillian J. Clark*)
70 Elm Street, Enfield, CT 06082
860.833.3195

## CERTIFICATE OF COMPLIANCE

I, *pro se* Plaintiff-Appellant Gordon Clark, certify that this **PRO SE PLAINTIFF-APPELLANT'S BRIEF** contains 14,000 words or less.

Dated and signed at Enfield, Connecticut, on March 1, 2024, by *pro se* Plaintiff-Appellant Gordon Clark, *in his individual, spousal, executor, beneficiary, and creditor capacities.*

_____

Gordon Clark
(*Husband & Executor of the Estate of Lillian J. Clark*)
70 Elm Street, Enfield, CT 06082
860.833.3195

## CERTIFICATE OF SERVICE

I, *pro se* Plaintiff-Appellant Gordon Clark, certify that a copy of the above **PRO**

**SE PLAINTIFF-APPELLANT'S BRIEF** will be served via *electronic service* on

March 1, 2024, to the following:

Patrick S. Tracey, Esq. *(Santander Bank, N.A. named Defendants)*
c/o Saul Ewing, LLP
131 Dartmouth Street, Suite 501
Boston, MA 02116
**Served via Electronic Service**

Jeffrey M. Knickerbocker, Esq. *(Bendett & McHugh, P.C. named Defendants)*
c/o Bendett & McHugh, P.C.
270 Farmington Avenue, Suite 151
Farmington, CT 06032
**Served via Electronic Service**

Sean R. Higgins, Esq. *(Wells Fargo & Company named Defendants)*
c/o K&L Gates, LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
**Served via Electronic Service**


Dated and signed at Enfield, Connecticut, on March 1, 2024, by *pro se* Plaintiff-

Appellant Gordon Clark, *in his individual, spousal, executor, beneficiary, and*

*creditor capacities.*

_____
Gordon Clark
*(Husband & Executor of the Estate of Lillian J. Clark)*
70 Elm Street, Enfield, CT 06082
860.833.3195